The Honorable Judges of the United States Court of Appeals in a Court of Seven Judicial Surveys. Here ye, here ye, here ye. All persons having business before the Honorable Court are admonished to draw near and give their attention as the Court is now sitting. Godspeed to the United States and the Honorable Court. Good morning all. Our first case this morning is Cohen v. Minneapolis Jewish Federation. Mr. Benson. Thank you, Your Honor. Good morning and may it please the Court. My name is Paul Benson and I have the privilege of representing the Trustees of the Melvin S. Cohen Trust. The Melvin S. Cohen Trust was created in 1980 with a gift from the donor, the Cohen Foundation, of $70,000. At that time, the Cohen Foundation's officers were Melvin Cohen, his wife, and his daughter, Mary Jo. From then until 2014, through the singular generosity of the Cohen family, the Melvin S. Cohen Trust has made over $35.8 million in gifts to various charities, none of whom were the Federation. Today, the Trust corpus exceeds $68 million, not including the over $9 million in distributions representing gifts from 2015 through 2018 that are currently being held in reserve by the Federation pending the outcome of this matter. For over three decades, the Cohen Trust operated very simply. On or about November 30th of each year, the Trustees would provide the Federation with a check in the amount of the Cohen Trust's annual grant as required by the IRS rules, along with a letter identifying the charities to whom the money should be distributed and the amount. In the words of the Federation's former Executive Director, Joshua Fogelson, the Federation would accept the check, say thank you, and then cut new checks to each of the designated charities. And this was true whether the charities were or were not familiar to the Federation. And this was the protocol from the Cohen Trust's inception for the rest of Melvin Cohen's life and for six years thereafter when Mary Jo Cohen assumed the role of President of the Cohen Foundation and Trustee of the Cohen Trust. But that all changed in 2015 when, upon receiving the Cohen Trust check and the Trustees' letter identifying the charities to whom the money should be distributed, the Federation claimed for the first time that the Trustees did not have the authority to make these designations under the Trust Agreement and ultimately refused to distribute any of the money to the designated charities. In other cases, even the charities its Executive Director had previously agreed fell within the functions, activities, and grant programs of the Federation. The District Court ruled for the Federation on this issue, which it called the central issue in the case. to donate the annual gift to a particular charity. As part of its reasoning, the District Court concluded that the Cohen family gave this money away to the Federation when they established the Cohen Trust and determined that the Trustees had no say whatsoever over the ultimate disposition of the funds because it was their duty. This is certainly not what the District Court said, and you don't advance your argument by making transparently false statements about the District Court's opinion. District Court said that the Trust had the authority given in the agreement, which was to designate the money for, and I quote, a particular function, activity, or grant program of the Federation. So the Trust could designate the money to any of those things, right? That's correct, and that's what the Trust… So why did you just say the opposite, that the District Judge said the Trustees had no authority at all to designate? Because the net effect of the… Grappling with what the actual Trust says and what the District Judge actually did really helps a lawyer. And I apologize, Your Honor, if I didn't make my point clearly. The District Court's position is that the Trustees had no power to designate specific charities, and I… That's not true either, and the Judge didn't say that either. Your Honor, I believe that he did. No, he did not. It really helps to be realistic about what happened. Your brief is also in denial, and that's why the District Judge, after the trial, removed a trustee and appointed an institutional trustee, because he found that the Trust and its lawyers were simply in denial. You really need to be realistic about what's going on here. Your Honor, I believe, and I can quote from the Court's opinion on this, that… It says on page 2 of the District Court's opinion, dated… Let me make sure I get the correct date. It's the opinion on summary judgment. Page 2, it's in our supplemental appendix at page 4. It says, for the reasons and those explained below, the Court concludes that the original trust agreement did not give the Trustees the right to direct the Federation to donate the Trust's annual gift to particular charities. It gives the Trustees the power to designate the gift to any function, activity, or grant program of the Federation. I agree with the Federation to give the money to something that's not in that category. It's a holding of the District Court. It is not a holding that the Trustees can't designate the money. The designation just has to come within the language of the trust agreement. Respectfully, Your Honor, I read that language obviously differently than Your Honor does. It's not my intention… It's a very long opinion. One has to consider the whole thing. But, look, if you remain in denial about what's going on here, you're simply encouraging us to accept the District Court's decision at the remedy stage. That was the District Court's reasoning. And if you show up here and show that you're still in denial, what are we to do about the remedy stage? Well, Your Honor, I would submit… Again, I am not attempting to be in denial or to misrepresent the District Court's opinion. I agree with you, Judge Easterbrook, that the trust agreement is, in my view, very clear in that it gives the Trustees the right to choose specific charities. No, it doesn't. It gives them the right to choose a particular function, activity, or grant program of the Federation. And at the end of the day, that is a charity, like, for example, Torah Academy, which is listed on the Federation's letterhead as a beneficiary partner of the Federation. That's a particular charity, like Memory, the Middle East Media Research Institute. Even though that's not a charity that, historically, the Federation has affiliated itself with, it nonetheless was a function, activity, or grant program in terms of how the trust operated for 34 years. So, at the end of the day, I think, Your Honor, and if I've overstated my position, I apologize, but I think we're more in agreement than we are in disagreement. The question of the control over the gift, in my view, is answered clearly in Article 4 of the trust agreement, where it says that the Trustees may, in their discretion, designate, in writing to the Federation, their selection of a particular function, activity, or grant program of the Federation for the benefit of which the trust's annual distribution or any designated portion of it shall be applied. So, as long as the gift meets that criterion, the language is mandatory. The Federation shall apply the gift to that particular charity, and that's what they did for 34 years. The only time that the Federation has ultimate control over the gift is in one of two situations. The first situation would be if the Trustees had specifically designated that the Federation was the recipient. Nothing in the trust agreement prohibits that. It never happened in the entire history of the trust, but it was certainly something that is plausible. The second instance, and this is covered by the language in Article 4, is in a situation in which either all or a portion of the grant is not designated at all by the Trustees. In that situation, it is treated as an unrestricted gift, and the Federation is at liberty to use that money as the Federation so chooses. Again, that never happened in the entire history of the trust. So, in our view, the language, to the extent that there is a reading of the trust agreement that's unambiguous, it's unambiguously in favor of the Trustees and the way that they had been giving gifts for over three decades, and not the Federation, contrary to the district court's decision. In addition, we believe the district court got it wrong when it basically held that the Cohen family gave this money away to the Federation. That's language that occurred during the last day of trial, and it's also completely contrary to the language in the whereas provisions on the first page of the trust agreement where it says that the donor has transferred to the Trustees, and that the donor and others may transfer property to the Trustees. Now, that money is to be held in trust, in the Cohen trust. It doesn't go directly to the Trustees. I want to make sure I'm very clear about that. But the idea that the money was just given over to the Federation, and that now the Federation has unfettered control over $68 million in a trust corpus, and $9 million in funds that were given to specific charities, and therefore are restricted gifts, to suggest that that now is something that the Federation is just allowed to do with as it pleases, to the extent that Trustees have a role in this, I'm not entirely sure what it is. Because, let's face it, the reason that the Cohen trust was created was so that it could give charitable gifts to worthy causes. The parameters, as Judge Easterbrook indicated, are that they must be functions, activities, or grant programs of the Federation. But if we're trying to ascertain what are the functions, activities, or grant programs of the Federation, the reality is that over the course of the trust's existence, really pretty much anything goes. Historically, the Melvin S. Cohen trust gifted money to the following charities that the Federation honored, and had no connection whatsoever to the Federation. In 1982, a $7,500 gift to a University of Minnesota professor. In 1987, a $1,200 gift to a workshop on Christian-Jewish relations. In 1993, a $500,000 gift to the Rachel Liba Cardozo Foundation, which had just been established on behalf of a relative of Melvin Cohen. And then, of course, as we indicated in our briefing, from 1998 to 2008, over a half a million dollars was given to an organization called Bridges for Peace, which is a Christian organization. And that organization was brought to the attention of Melvin Cohen by one of his employees, an engineer at National Presto Industries. And then over a million and a half dollars was given to the Middle East Media Research Institute, which again was an organization that the Federation had no connection to. To make matters more compelling in this regard, in 2006, the Federation amended its Articles of Incorporation to include support for numerous non-Jewish charities. And originally, the Articles of Incorporation of the Federation were limited primarily to Jewish charities. As a consequence, that really opened things up. And if you look at the Form 990s that the Federation has submitted, and that are a matter of record in this case, you will see that there are gifts to Planned Parenthood, Wilderness Inquiry, Can Do Canines, and Carleton College. Now please understand, I am in no way, shape, or form suggesting that these are not worthy charities. But at the end of the day, if those charities fall within the ambit of the purposes, the charitable purposes of the Federation, then really the Federation had no business, no right whatsoever, to refuse to make the gifts in 2015, and then 2016, 2017, and 2018. Mr. Benson, all those charities that you mentioned in your recent comment, do they satisfy Article 4? Ultimately, Your Honor, the determination of whether a particular gift falls within the functions, activities, and grant programs of the Federation is left to the Federation. And perhaps that's where Judge Easterbrook and I got off the rails. Because I do acknowledge that the Federation has what is ostensibly veto power over the gifts. But again, if you look at the history over 34 years, they never once exercised the veto power. In fact, when they were debating whether or not to give to Bridges for Peace. Well, did the power expire by the history? Is that your point? Well, we do argue, as one of our arguments, we do contend that the trust agreement was modified by conduct, and that that history should be taken into account as to how the trust in fact operated. That those charities and those gifts were ratified or modified by that historical conduct. In addition, the Federation has a donor advised fund. And through that donor advised fund, it's given to Greenpeace, the ACLU, Doctors Without Borders. Again, excellent, worthy charities. But when you consider that the Jewish Community Foundation is where that donor advised fund is, and that's also in its annual reports where the Federation lists the Melvin S. Cohen Trust, this language from the Federation's website is significant. Giving through the Jewish Community Foundation is up to you. You and you alone designate how your gift will be used. You can provide unrestricted funds to help meet community needs now and in the future, or provide permanent resources to aid identified needs in Minneapolis or throughout the world that are of particular interest to you and your family. And at the end of the day, then, we ask questions during discovery about, you know, Federation, what are your functions, activities, or grant programs? And as we argue in our briefs, the answers that we got were all over the board. When I took discovery of the various officers of the Federation, their answers were all over the board. So what exactly constitutes a function or activity of a grant program of the Federation is, again, up to the Federation, but the Federation has operationally defined it in such a way that basically anything goes. And so our position is that those gifts... Your argument seems to be that if the Foundation has been willing to be latitudinarian in the past, it must be latitudinarian forever. Is there any basis for that in the trust document? Your Honor, I confess, I'm not familiar with latitudinarian. All right, let me put it differently. The trust document says that the Foundation, that the trust, can designate the money for any program of the Foundation. Until five years ago, say, the Foundation took the view that it would establish, as a program of the Foundation, anything the trust wanted. Now the Foundation takes the view that it won't do that. It will exercise independent judgment in deciding what is a program of the Foundation. You seem to be arguing that because the Foundation was cooperative in the past, it must be cooperative forever. Is there any basis for that in the trust document? Your Honor, I believe there is because of the language that it must be, that the function, activity, or grant program must be of the Federation. The Federation is active. Exactly, but you agree that the decision about what is a program of the Federation is a decision to be made by the Federation. I do agree. The question I'm asking is, just because the Federation in the past has been willing to make as its program what the trust wanted, does that compel the Federation to be similarly, I'll use the word again, latitudinarian, similarly cooperative in the future? The trust document doesn't compel it. However, there has to be a principal basis in terms of what it's doing. In other words, it can't just all of a sudden say, as it did in 2015, that a gift to Torah Academy is not a function, activity, or grant program of the Federation. But that's what it did. Why not? A Federation may have X as a program one year and not the next. A foundation can decide what its programs are. It adds some in any given year. It drops some in any given year. The Ford Foundation in one year may make a big gift to Harvard University, and in the next year the Ford Foundation may decide, no, we're not interested in Harvard anymore. We're going to make gifts to some other university. That's within the scope of the Ford Foundation's prerogative. Why is it not within the scope of this Federation's prerogative? Well, first of all, the example that you gave is not applicable to Torah Academy because it still exists, and it's still listed as a beneficiary partner of the Federation. Your Honor, I would simply say that it makes no sense for the Federation to be allowed to say that a particular charity is no longer a function, activity, or grant program vis-à-vis the Cohen Trust, and yet recognize it as a valid charity supported by the Federation in other contexts, which is what happens here. I mean, the Federation takes great exception to the idea that it's being characterized as a conduit for the funds here, but in reality that's what organizations like the Federation do. They receive gifts from charities and from individuals, and they pass those gifts typically along to other charities. And there are instances, obviously, where charities and individuals give the money directly to the Federation, but again, that's not what happened here. And all of the gifts were designated. So I don't believe that the Federation has a valid basis upon which to deny the gifts that are currently being held in reserve. And I would further argue that to the extent that that is an issue that is in dispute factually, it should be resolved by the trier of fact. The Court's decision resolved it as a matter of law, taking the position that all the gifts, or excuse me, that the trust language on this issue was unambiguous in favor of the Federation. Well, that's his position. Your position, Mr. Benson, the district says has no textual basis because of the way the Article IV reads. I appreciate what you're saying about history, but I share Judge Eastbrook's concern about what limitations were placed on the foundation. Well, again, at some point there has to be a rule of reason that's applied in the contract. And, you know, if Torah Academy is continually, you know, a beneficiary partner of the Federation, what's the basis upon which the Federation can say to the Cone trustees, nope, you can't do that? Well, what is your view was the Cone Trust's aim in creating the trust? To aid Jewish causes exclusively or primarily? What should you say we should look to in interpreting the language? Well, the Cone Trust was established to support the charitable purposes of the foundation. As a charitable trust, it can do that. Should we look then at the foundation at the day that the grant was initially created? Or do we look at the evolution of the trust, excuse me, the Federation over time? What do we look to? Well, obviously there's a great deal of literature in this area that talks about looking at the situation at the time the trust was created. Right. And at that time it was very clear not only, we would argue in the trust agreement, but also in the writings of Melvin Cone that were contemporaneous or shortly thereafter. The primary reason the trust was created was to allow the Cone Trust to make gifts through the Federation to situations in Israel, Israeli emergencies and other types of- That seemed to be a focus, I mean, about Israel. Correct. As an overarching purpose. That is absolutely correct, Your Honor. And other forms of Jewish philanthropy. And, you know, one of the reasons that there appears to be this disagreement between the parties is because the functions, activities and grant programs of the Federation have expanded over time and now include non-Jewish causes. Now I want to make sure that we're very clear about this because I can anticipate, I think, what Mr. Moaban may say. We're not saying that the Federation is no longer Jewish. And we're not critical of the Federation for expanding its functions, activities or grant programs or its charitable purposes. But because they have done so, that means that those gifts that were made in 2015 through 2018, there's no principle basis for them to be denied. And at the end of the day, that's the problem that we have with this. And furthermore, the district court compounded the problem by taking the position that that $9 million that is being held in reserve, which clearly were restricted gifts because they had specific designee charities. It transformed them into unrestricted gifts that the Federation can do with however it pleases. Now I'm not trying to cast aspersions on the Federation. I'm not saying that the Federation is going to use the money for some inappropriate type purpose. But the reason that we are here is related to the control over the money and the ability to make the grants to a specific place. And that's where the district court and the Federation and the trustees have gotten at cross purposes. You mentioned earlier something about a donor advised advisory fund. Yes. And then I think that's different than the one the daughter set up. Is that correct? It is, Your Honor. The donor, I apologize. Well, no, I'm sort of curious. That's probably when the daughter had some other interests and went beyond that. Well, actually. Is that, and I guess you would say that's not illegitimate? No, not at all, Your Honor. I'm not saying that at all. What prompted, first of all, the donor advised fund that I was referring to is a donor advised fund that is through the Jewish Community Foundation, the JCF, which is affiliated with the Federation. Okay. The donor advised fund that Your Honor is referring to is the one that Mary Jo Cohen set up for Jewish education and support. And quite candidly, that particular fund, because, again, the gift to that fund is a restricted gift specific for Jewish education and support. That gift is very, very clearly a restricted gift and can only go in that direction. And what prompted her to do that is that the Federation in this, I believe it was the summer of 2015, a request was made to the Federation to make a gift to Memory, the Middle East Media Research Institute, which the record reflects has received funds from the Cohen Trust over $1.5 million over a number of years. And remarkably, the Federation indicated that it wasn't comfortable making that gift. And so Trustee Cohen was concerned about this and was concerned that whether this was going to be a problem going forward. And that's one of the reasons that she set up a donor advised fund for Jewish education and support to make sure that money could get to organizations like Memory. Last they had always gone through the Federation to an organization like Memory. If for whatever reason the Federation wasn't going to continue that practice, she wanted to make sure that the charity would still receive the money. With regard to this issue that the district court described as the central issue in the case, because the trustees contend the court got it wrong on that issue. And because the trustees contend the court got it wrong when it stayed very clearly that the actions of the trustees must benefit the Federation and not the charitable purposes of the Federation. Because of those two fundamental problems with the district court's decision, a cascade of erroneous decisions occurred thereafter. Those erroneous decisions include the decision to treat the $9 million as an unrestricted gift. I've already talked about that. Those decisions include the decision to remove Trustee Cohen, not recognize the trusteeship of Frederick Franson, and ultimately revise the trust agreement so that a bank could assume the role of the independent trustee, which is clearly contrary to the language of the trust agreement. And as we talk about donor intent, the cornerstone of donor intent is the trust agreement. And the trust agreement couldn't be more clear that a bank was never contemplated as a potential trustee. There's language in the document that doesn't even require the funds of the Cohen Trust to be invested at all. There's no requirement that they be diversified. So clearly a bank was never contemplated. All of those decisions, we would argue, cascade from that initial central decision, and as a consequence the court's decision was wrong. All right. Mr. Benson, you used all your time. We asked a fair amount of questions, so I'll give you five minutes for rebuttal. You used the 30 minutes. You reserved. Reserved. I apologize, Your Honor. I thought this was counting down from 20. Thank you for granting me the five. I promise I won't waste it. All right. Mr. Hogan from HBIN. Good morning, Your Honors. My name is Keith Mulvahn, and I represent the Minneapolis Jewish Federation. May it please the court. No doubt the Federation has been grateful over these many years for the generosity of the Cohen family and the related foundations that have supported the Federation through this trust. I can assure you the very last thing that the Federation wants to have happen is to be here in court adverse one of its largest donors. But along with the generosity of the Cohen family, when you create a trust and you set it up as a supporting organization of the Federation and you accept tens of millions of dollars in tax deductions for your contributions, well, you've got to follow the rules that you have set up. In this case, there are very distinct rules in the trust agreement that the district court has construed and properly found limited the ability of the trust to designate gifts and trust agreement by any fair reading does not allow for the designation of gifts to particular charities. But we go a step further than that because this trust was set up to be a supporting organization of the Federation, and there are very particular and detailed regulations which absolutely prohibit what the trustees are trying to do here. What they want to say is that they set up a trust that supports charitable purposes broadly and it's not tethered to the Federation and therefore they can designate gifts to any charity they want if it falls within the broad ambit of the Federation and the money doesn't have to go to the Federation. That's what you do when you create a private foundation. This is not a private foundation under the IRS rules. This is a trust and the trust is a trust for something. These are trustees and they have a beneficiary and one of the biggest rubs in this case has been even as to the argument you're hearing today, these trustees deny that they had duties to their beneficiary. That's where the district court started in finding that they had a fundamental misunderstanding of their job. They are not trustees to set their own agenda of charitable purposes and decide how they should fund. They are there to benefit and serve the Federation. That's how this was set up. That's what the IRS rules require. Now what happened over the course of many years is something that you can understand which is the Federation is enjoying the largesse of a very large donor. These were millions of dollars being contributed each year. The designations, the overwhelming weight of the designations were made for a function of the Federation which was apparent needs in Israel. You can go through specific designation letters written throughout every year, throughout the time period, and you will find that language over and over again. Apparent needs in Israel, not designation to a particular charity, but that was one of the Federation's functions to support Israel. That's why I think Melvin Cohen selected the Federation as his supported organization. And certainly they could continue to use that mechanism. They could say, Federation, we want you to use our funds to support Israel. That's what happened. That's really what happened. And then each year, in many of the years, a small portion of these gifts were made by request. Melvin Cohen would write a letter on behalf of the trustees and he would request, that's the language, not demand, not insist upon over the objection of the Federation, we would request could you give $7,500 of these funds to Torah Academy, which was an organization that the Federation already funded. And there were similar gifts like that. It was a small portion of a large gift. The Federation was dealing with a large donor and accepted the suggestions and agreed to do that, not because it was required to do that, not because the trust agreement allowed the trustees to mandate it, but they just did that as an accommodation. And that's the process that continued for many years. And what changed in 2015 was we lost that designation to Apparent Needs in Israel and instead the trustees set a laundry list of 30-some different entities that they wanted to be funded. None of them were a function, activity, or grant program. They were all specific third-party beneficiaries. And the most concerning was a $1.6 million donation that the trustees wanted to make to a donor-advised fund that was held by Trustee Cohen. The trustees at this point are sending the bulk of their contributions back to one of the trustees. And that was a donor-advised fund which, by its nature, and we supported this in our brief, that was a donor-advised fund that was nominally for Jewish purposes, but that Trustee Cohen had solely the ability to change that to any type of charity that she might choose to support. So that's the rub that really got us to the point where we end up in court. The premise of the trustees throughout this litigation has been that this trust is not for the Federation. And I want to take a moment to just simply look at the trust agreement and see how that is wrong in so many places. And we can start with the title of this trust. It's a trust agreement, the Melvin S. Cohen Trust for the Minneapolis Federation for Jewish Service. That's the former name of the Federation. It's hard to imagine you can get past the title of this trust and not conclude that it was set up for the Federation. The suggestion in the trustees' brief was that Melvin Cohen and his foundation didn't really care about the Federation, but the very first recital in the trust agreement says the donor has, for a number of years, been a supporter of the Minneapolis Federation for Jewish Service. If we're going to talk about settlers' intent, everyone agrees, trustees, the Federation, the district court, that the settlers' intent is embodied in this trust agreement, and there's no reason to go any further unless there's something that takes you out of the Federation's position as to how the gifts can be handled. When we go to the bottom of the first article of the trust agreement, this is the critical language in which this trust is set up. So it is the intention of the donor that this trust shall be operated in connection with, as that term is defined in Section 509A3 of the code, that's the IRS code, to operate it in connection with the Federation. And then it goes on to say, insofar as possible, all of the terms of this trust are to be construed in light of that intent. So when you're looking at the language, function, activity, or grant program, you have to consider that in the context that this is a supported organization of the trust. Now, it's notable in their entire opening brief on this appeal, they don't even mention the requirements of the IRS code as to a supporting organization. And in argument today, you didn't hear anything about it again. The district court, however, made that a fundamental part of its decision because this trust agreement has to be construed to follow the supporting organization regulations. Those regulations allow a charity to avoid the onerous regulation of a private foundation. And the premise, the way that regulation is supposed to work is that if you set up a charity that is devoted to another public charity, so this trust is devoted to serve the Federation, which is a public charity, then that charity itself will be motivated to ensure that the trust follows its charitable purposes. And so there are any number of very specific requirements that ensure that the supported organization is going to be attentive to the supporting organization. And that means, and the district court quoted specific language from the rules that says, the articles of incorporation for the trust cannot authorize contributions to any party other than the Federation. And there are four different places that the IRS regulations make explicit that all the contributions, the distributions from this trust have to go to the supporting organization. And for this trust, the only supporting organization is the Federation. When you get to this Article 4, which is the designation language, you have to read this in context of the whole paragraph. When you're looking at functions, activities, and grant programs, the language right before that says, the trustees shall maintain a close working relationship with the Federation to determine its needs. And as a part of such relationship, shall consult at least annually with the Federation to obtain information concerning its operating budgets, proposed grant programs, recommendations of the Federation for the use of the trust income, and then this last part is really important, and reports of uses to which previous distributions were applied. So the trust agreement contemplates that the trustees are going to meet with the Federation to find out how the Federation used the money from the prior year. The language directly after functions, activities, and grant programs in the trust agreement also directly relates back to the IRS regulations. It is the donor's intention that the trust be administered in a manner ensuring the attentiveness of the Federation to the trust's operations. And that, as I go on, I'm not going to read every provision in the trust agreement that ties this trust to the Federation, but there's a Federation trustee appointed to ensure that close working relationship. The Federation is required to approve the accounts of the trust, and then in three places under the amendment section, the trust agreement expressly refers to the Federation as the beneficiary of the trust because it says if the Federation or a substitute beneficiary of the Federation no longer exists. Finally, if for some reason the trust loses its IRS qualification, the trust agreement provides that the entire balance of the trust funds will be given to the Federation. So when you read function, activity, and grant program in context of all the trust agreement language and the IRS regulations, you can only conclude that these are contributions that have to be made to the Federation and not to third-party charities. So function, activity, grant program. We advocated to the district court that these are commonplace terms that can be understood in their ordinary meaning. A function of the Federation is its purposes, the things that it does. For example, support of Israel, support of Jewish education. We posited that our articles of incorporation would be a good place to look to see what our functions are. The argument of the trustees is this language is ambiguous, but they have never once come forward to say any alternative explanation for what these terms are. An activity of the grant program, again, or activity of the Federation. Not a hard thing to figure out. The Federation has activities. It has missions to Israel. It publishes a newspaper. These are all, again, commonplace understandings of what an activity would be in this context. And then a grant program, and I think this is where the trustees mistake a grantee for a grant program. So a grant program is a scholarship program, right? So you can give money to a scholarship program, and then the scholarship program will select the grantee. Here, the Federation has grant programs. It runs an annual campaign where they collect money from a variety of sources, and then the Federation board makes grants from that. This language, consistent with the IRS regs, says that the trustees could contribute to a grant program. What it doesn't say is that they can do anything to select the grantees of the grant program, which is what they've tried to do. The trustees themselves recognized that this language didn't say what they wanted it to, so they tried to amend it in a manner that the district court found was a breach of fiduciary duty. It was a breach of fiduciary duty both in the process that they undertook, because they did it secretly, even though there's language all over the trust agreement and IRS regulations about the required close connection between the Federation and the trust. They went off and did this amendment to the trust agreement without even telling the Federation, and then they sat in a meeting with Federation representatives in April of 2016, and reportedly were going to discuss how to resolve their differences about this designation language and never even told the Federation representatives in that meeting that they had already changed the language, nor did they tell them that that same afternoon they were going to start this lawsuit, which was brought by the trustees to do two things. One was to remove the Federation as beneficiary on the claim that they later abandoned, which was essentially that the Federation wasn't Jewish enough. And then they proposed their substitute beneficiaries, which were two organizations to which the trustees themselves were closely tied. In fact, Trustee Kalina, who was a lawyer, was a general counsel and founder of the National Community Foundation and was intimately involved with Donors Trust, the other organization where Trustee Cohen held this donor advice fund. So they knew that this designation language didn't support their position. They tried to amend it to add the word Donate Charity. They wanted it to say Function, Activity, Grant Program, and Donate Charity. Now, if they thought that this language in the trust agreement could encompass their position, then you don't have to amend it to add Donate Charity. So our view on the designation language is that the trust agreement does not, under any sound reading, allow for contributions to third-party beneficiaries. And then the IRS regulations, as I mentioned in a number of places, make clear that what they want to do is prohibited. The district court focused on this language. It says an organization will, and that's referring to the trust, will not meet the organizational test under Section 509A3A if its articles expressly empower it to pay over any part of its income to or perform any service for any organization other than those publicly supported organizations specified in its articles. That's what is referred to as the organizational test. It's Treasury Reg 1509A-4 subpart C. That was a fundamental part of the district court's ruling that's never been addressed by the trustees in their opening brief. In their reply brief, they throw out a provision of the IRS regulations that they hadn't argued before, and this is my first opportunity to respond to that, and I just want to make clear that there's no confusion about this. They make reference to provision of Part E of the regulations, which isn't called the operational test, and they cite some language that talks about that a permissible beneficiary would include making payments to or for the use of individual members of the charitable class benefited by the specified publicly supported organization. That's the language that they have relied on in their reply brief. When they provide that quote to the court, they omit the word individual, which is critical because when you read the whole section, it's quite clear that this is dealing with a very special case where a grant might be made to an individual, not a charity, not a third-party charity like they've tried to do, but to an individual. It's a context, and there are examples that are written into the rules, and if you look at example three for this particular section in the operational test of the rules, example three actually refutes exactly what the trustees are trying to argue. Example three says that if you try to make a contribution to a charity that's not your supporting organization, that that will not comply with the records. I just don't want to let that go unanswered because it came up for the first time in the reply brief, and we didn't get a chance to address it in the briefing. Another source that I want to put forward just to, if I haven't cemented this already, we have the regulations when the Treasury Department implemented the new regulations for this area of law on December 28, 2012. Is it the Treasury Department? I'm sorry? Who initiated that? It's the IRS. The what? Internal Revenue Service. Yeah, okay. When they issued the final regulations implementing these rules on December 28, 2012, they issued TD Treasury Decision 9605, and in two places in these regs, they state expressly, it says, Type III supporting organizations generally are not permitted to make grants to organizations other than their supported organizations. Thus, the final and temporary regulations do not permit supporting organizations to satisfy the attentiveness test by making distributions to third-party organizations. So on a distribution language, to sum up, the trust agreement doesn't allow contributions to third-party charities. The Treasury regulations absolutely prohibit it. The course of dealing between the parties up until 2015 was that the trustees generally designated most of their contributions to the function of apparent needs in Israel. And on a couple of occasions on each year, if they wanted some small gifts to go to particular organizations, the Federation agreed to that as an accommodation. You can't change the Treasury regulations or modify the trust agreement by just agreeing to make an accommodation to your daughter. So that's why the district court was right in finding that these designations that they've tried to make for the last four years are just improper. There's a lot more to this case than just the designation language. There were seven different findings of improper conduct or breach of fiduciary duty by these trustees, none of which are appealed in this case. So what the trustees chose to do was to serve up this designation issue and then challenge the remedies for breach of fiduciary duty. But they do not challenge the underlying findings that these trustees breached fiduciary duties and did other improper conduct. The judge had the authority under Wisconsin Statute 701, which governs trusts and is undisputedly the authority for the remedies that were imposed here. The judge who saw the trustees, examined them at the bench trial, heard their testimony, spent two years with this case and saw all the things that were happening, the judge exercised his discretion to impose some common sense and appropriate remedies which are before you on an abuse of discretion standard. The first thing the judge did was to consider whether these trustees... One of the changes is costly. A third-party trustee. I assume that the foundation bears those costs in reduced grants. Is that assumption right? Yes. And is the foundation complaining? Federation complaining. Too many efforts here. The federation strongly advocated for having an institutional trustee. When this trust was created with three volunteer trustees, it had $70,000 in it. That was in 1980. Now it has nearly $70 million. And it's a much more complex and has been a problematic trust. So the judge looked at a variety of considerations. Now the first thing is this trust has not been cost-free. There have been... One of the decisions of the current trustees was to invest $70 million in essentially certificates of deposit. So it's been ultra-conservatively managed from a financial point of view. There was a cost to that. There was an accountant who worked with Trustee Cohen and her salary was allocated and paid by the trust over these years. And that was a lot of money. It was $80,000. We challenged it, and as it turned out, when we got into discovery in this case, we learned that there were some serious problems. And this was, in fact, one of the breach of fiduciary duty issues. Trustee Cohen had a number of personal trusts and had this accountant handling her family's personal tax matters, also handling personal matters like getting car repairs done and taking her to doctor appointments, and then also doing the tax work for the trust and doing the investment in the certificates of deposit. There was no effort made to allocate her time or even keep records of what her time was on the various tasks that she spent her time on. And then Trustee Cohen, who had a clear conflict of interest because every dollar that was charged to the trust was a dollar that she and her family didn't have to pay, she alone, without the involvement even of the other trustees, let alone the involvement or knowledge of the Federation, was charging 50% of this accountant's time to the trust. So, yes, there will be an expense to having U.S. Bank as an institutional trustee. It will be perhaps two or three times more than what was being charged prior to this for Ms. Ellenson. Her services won't be required anymore. But you can also anticipate that any kind of reasonable management of this money is going to more than pay for itself in terms of the investment fee that will be charged by the bank to properly manage it. The court looked at a number of real serious problems with how this trust was run. We brought a claim saying that the trust hadn't been prudently managed from a financial point of view. The judge found that to be untimely, but the judge still was critical of the notion that you would invest $70 million in CDs. Beyond that, we've had the conflict of interest with Trustee Cohen charging her personal expenses to the trust. We had the problem with Trustee Kalina, who was an attorney, who provided a trust that in 40 years had virtually zero legal expense. But Trustee Kalina was both trustee and lawyer for the trust and charged almost $200,000 in legal fees to the trust in less than two years. The court found that that was a conflict of interest. And we also found, this was the subject of the bench trial, that the work that Trustee Kalina was doing was not to support the federation or even to benefit the trust, but it was to support this notion that these trustees had that they could basically isolate and remove the federation as beneficiary. So we have these conflict of interest problems. We have the whole situation with the secret amendment of the trust. And we have the persistent notion of these three trustees, which was that they are not bound to the federation, that they had no duty to the federation, that their duties were to the settlor. And in Trustee Cohen's words, she herself was the settlor. So she had a duty to herself, and that's evidenced by all their behavior in running the trust. So the judge concluded after seeing all of these things and not insignificant was the notion that they were going to try to designate money to themselves through this donor advice fund, a donor's trust. The judge concluded that there was such a pattern of conduct that was inconsistent with the notion of being trustees, that these trustees would not be suitable, and so they were removed. The trustees don't challenge the removal of Trustee Kalina. Trustee Franzen, of course, it was found that he was selected not because he had an – he was supposed to be the federation trustee. He was selected not because he had any connection with the federation, but exactly because he wouldn't be involved with the federation. And we put in the record the correspondence between Trustee Cohen and Trustee Franzen where they discussed their desire to make sure that the federation would not have input on a successor trustee. The last thing I'll talk about is the funds that have been deemed to be undesignated. So when the trustees made these improper designations, the federation did something reasonable. They put the money in escrow. They had just been sued by the trustees to see what would happen as a result of the case. It turns out that the district court found that the federation's position was correct. Our view is the trustees had a right to make a proper designation of those funds in each of those years. They chose not to. They read this trust agreement. They ignored it. They made these improper designations. So because they never made a proper designation, it should be deemed undesignated. Thank you, Mr. Cohen. Thank you very much. Mr. Benson. Mr. Mullivan's argument is very similar to what the district court did. He says read the title of the trust, apply private trust principles to it. Private trusts require a specific beneficiary, and from there conclude that all of the duties were owed to the federation. And because the trustees never took that position and never acted consistent with that position, there were all kinds of breaches of duties. That's essentially what the district court did, and that's essentially the argument that Mr. Mullivan makes. The problem is that this is a charitable trust. It's not a private foundation. I found it very interesting that in all of Mr. Mullivan's discussions of the various regulations, and believe me, they're extremely complex, but in all of his discussion about the regulations, he never once said that the Cohen Trust didn't comply with them. So, yes, there's an organizational test. Yes, there is an attentiveness test. Yes, there's an operational test. But each one of those tests contemplate, each one of those regulations, require that a supporting organization be, quote, organized and at all times thereafter, operated exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more specified organizations. And so our position has been from the very beginning that the duties that are owed are to the charitable purposes of the federation and not the federation itself, and therefore these grants don't go to the federation. They go through the federation to charities designated by the trustees. There are a number of misstatements that were made. One misstatement related to this idea that the apparent needs in Israel language appears in multiple grants over multiple years and is just floating in the ether. That is simply not true. As we argue in our reply brief on page three with citations to the record, the apparent needs language always included instructions that the funds for apparent needs in Israel go to a specific charity, the Emergency Fund in New York. Mr. Moabon began here by saying that the federation is disappointed that we're here litigating this matter. What he fails to acknowledge is the fact that when we took discovery in the case, we discovered that the federation was preparing its own complaint against the trustees and that we just happened to beat them to the punch. We filed in Wisconsin. They were getting ready to file in Minnesota. The argument that he makes about the trustees benefiting personally from the way that they are handling these gifts not only is inconsistent with the findings of the trial court, the district court. In fact, at the beginning of our reply brief, we quote the language where the district judge said, this isn't about greed, it's about control, and we agree with that. But it's all based on these funds going into a donor-advised fund, and Mr. Moabon misapprehends what a donor-advised fund is. When money is put in a donor-advised fund as a restricted gift, it must go. If it is accepted by the donor-advised fund, the restriction must be honored. The other thing about a donor-advised fund is that once the money is in the fund, it is technically owned by the donor-advised fund. It is not owned anymore by the individual or individuals that put it into the DAF, nor is that money controlled necessarily by the individuals who put that money into the DAF. Instead, under the regulations, they function in an advisory-type role. They can make recommendations as to where the money goes, but in that instance, the money is technically owned by the donor-advised fund. The process here is very simple. When you read these regulations and you look at these arguments, the fact of the matter is the money was always given to the Federation. The question is did the Federation have ultimate control over it, or does it go to specific charities? The district court said it couldn't go to specific charities unless, of course, the Federation agreed. So if allowed to stand, the district court's decision will have a profoundly negative impact on the law of charitable trusts and discourage charitable giving. The district court ignored donor intent and construed the trust agreement in a manner to reach a desired result, that the Cohen Trust should exist to benefit the Federation rather than the Federation's charitable purposes. Courts cannot be allowed to rewrite trust agreements in such a manner. The decision should be reversed. Thank you. Thank you to all counsel. The case is taken under advisement. And the court will proceed.